UNITED STATES OF AMERICA
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-vs-                                                    **SENTENCING MEMORANDUM**

DUSTIN HURLBURT,                                        File No. 04-CR-146A

        Defendant.

## Introduction

Dustin Hurlburt pled guilty to Mail Fraud (18 USC §1341). He is scheduled to be sentenced Thursday, May 19th at 1:00 p.m. Mr. Hurlburt's total offense level is twenty (guideline range of 33-41 months). At sentencing the Government will request a §5K.1 departure of one level, calculating Mr. Hurlburt's guideline level at 19 with a sentencing range of 30 - 37 months.

## Personal Family History

Dustin Hurlburt was born and raised in Warsaw, New York. Now 27, Warsaw has always been his home. Dustin has a remarkably strong and supportive family.

Although his parents divorced when he was two years old and he was raised by his mother, he continues to be very close to both parents. His father Dan Hurlburt, 53, was a Wyoming County Sheriff's Deputy for twelve years, assigned to the Evidence Collection Unit. He is now employed at BOCES doing maintenance work. Dustin's mother, Karen [Ott] Hurlburt is 50. Also born and raised in Warsaw, Karen has provided child day care at her Warsaw home for over thirty years. Mrs. Hurlburt was one of the first New York State Day Care providers licensed in Wyoming County. Currently she is licensed for ten to twelve children, (with an assistant). Six local kids presently spend the day at her home.

Heidi Hoffman is Dustin's sister. Twenty-eight years old, Heidi and her husband Keith live in Warsaw with their two young children. Keith is a foreman is the Mt. Morris salt mines. Heidi Hoffman remembers growing up with her younger brother:

> "He has always been very passive in dealing with his emotions and is very willing to let things slide when something upsets him. Dustin is a follower and always has been. He is very impressionable when it comes to making decisions, hence, he can easily be

persuaded to do things he knows best not to do.  Up until this point, he has never been in trouble nor has ever thought about getting into trouble for that fact . . .

— — — —

Dustin is a kind hearted person who wouldn't hurt a fly on the wall."

*See attached letter of Heidi Hoffman*
*August 10, 2004*[1]

## School and Work

A good athlete, Dustin graduated Wyoming Central High School in 1996 where he played soccer and basketball.  Dustin always wanted to be an architect.  To learn drafting, Dustin studied at Genesee County Community College for a year and one-half.  Leaving school early, (which he deeply regrets), Dustin took a job at TMP Technologies in Wyoming.  Beginning on the floor fabricating rubber forms, Dustin was soon promoted to the quality control department.  But he was only making $8 an hour.  Dustin was ambitious and hard-working; he believed he could do better.  He left his factory job and started his own construction business.  Hurlburt Rental and Construction.

## Death of His Child and Her Mother

Pat Cook[2] was 23 years old when she died January 3, 2000.  Originally from Perry, New York, Pat and Dustin were living together.  They planned to marry.  Dustin learned that Pat was pregnant.  Both were very happy; they looked forward to raising a family together.

Dustin will never forget January 3, 2000.  He and Pat were driving in Dustin's car. Pat was eight and one-half months pregnant.  Suddenly she passed out.  Dustin rushed her to Wyoming County Hospital.  The doctors tried to keep her alive; they could not.  A pulmonary embolism caused her death.  Trying to save the baby, the hospital performed an emergency C-Section.  The baby, named Elizabeth Hurlburt, did not live.  Oxygen deprivation took her life.  Dustin recalls holding his little baby in his arms.  She was on life support; he knew she was going to die.

---

[1] Annexed are 21 letters from friends and family of Dustin Hurlburt.

[2] Patricia Cook was the granddaughter of prominent Warsaw Attorney, Charlotte Smallwood-Cook.

# Lisa Hurlburt

Lisa [Hayes] Hurlburt is 33 years old. She and Dustin have been married for two and one-half years. Lisa explains their relationship:

> "In 1999, Dustin and I developed a romantic relationship and in December of that year, I became pregnant. I didn't want to tell Dustin because of the fact that he is six years younger than me and I felt that I did not want to ruin his life by telling him he was going to be a father at the young age of 22. I then moved to Florida, without telling Dustin the reason why I was moving. I gave birth to our son in August of 2000. I never told Dustin that we had a son together.
>
> I moved back to New York in June, 2001. Dustin had heard that I was back in town, with a child, and the child may be his. Dustin confronted me, I told him the child was his and Dustin took full responsibility for his child. Paying child support and seeing his son every day. Dustin and I did reconcile and had a second son together. Nathan who is now two years old. We were then married in October of 2002 and had a third child, Brooke who is now ten months old."

Lisa Hurlburt is a loyal, committed wife and mother:

> "Dustin knows what he did was wrong but did not realize he could get into so much trouble for what he has done, and also for what he was forced to do. Dustin is a good husband and I could not ask for a better father for my children."

*See attached letter of Lisa Hurlburt,*
*August 16, 2004*

# Day Trader

In the late 90's the stock market was soaring. Tech stocks were booming; internet companies were flying. People believed you couldn't miss; everyone wanted to cash-in.

Dustin began day trading from his own home in Warsaw. He wasn't alone; thousands of people across the country were spending hours watching their computer screens and making money.

Dustin, like many others in the boom years did well. He opened an account at Day Tech, with a few thousand dollars (Day Tech later became Ameritrade). Dustin eventually had three computer screens at his home. He watched the market religiously. For example, he knew, from watching the screens, when a large investment house like Goldman, Sachs was buying or selling. He simply followed along and made money.

Beginning with just some friends at work, his trades increased; he was making money. Warsaw is a small town. Word about Dustin got around. Friends asked him to invest for them.

Dustin, himself, never solicited anyone. He never made a dime day trading with other people's money. He charged no fees, nor commissions. Very simply, all the money went into one account at Ameritrade. If the trades were profitable, everyone made money and their investments increased.

Robert ("Bob") Burt knew Dustin. Burt was part of a successful lumber company in Perry, New York. Burt invested with Dustin in 2001 before the market started to sink. Bob Burt started to bring other local people to Dustin to invest their money. Everyone wanted to join in Dustin's day trading success. In fact most of Dustin's investors were brought in by Burt. (Dustin eventually had approximately 23 investors.) After peaking in late 2001, the market began its rapid slide. Tech and internet stocks plummeted. Dustin panicked. His account was losing money. He didn't know what to do. Afraid to tell the investors their accounts were dropping, he acted foolishly and imprudently. Routinely, he provided investors with account statements, letting them know how much their account was worth. Instead of being truthful as the money dried up, he made up false account statements showing investors that their account value increased. This was not true; this information was false.

Bob Burt was smart. He didn't lose money. Knowing the market indexes were going down, Burt brought in new investors. Forceful and intimidating, he threatened Dustin. He made him pay him back with new money that he was bringing in. Dustin should have said no; he should have closed the account and paid investors their shares. He chose not to. His actions have cost him a heavy price. He hurt a lot of people.

### FBI: Candid and Cooperative

On November 13, 2003, FBI Agents visited Dustin at his home in Warsaw. The visit was not expected. Dustin was honest; he answered the Agents truthfully. He had nothing to hide; he admitted what he had done. Six days later Dustin faxed to the Agents handwritten statements for each investor's account showing its receipts, withdrawals and its accurate value. Dustin also included the false "account values" he earlier provided to each investor. Had he wished, Dustin could have told the Agents he didn't want to talk to them. Nor was he obliged to provide them with any documents. He chose otherwise, readily admitting his "scheme".

### SHOCK Program Cancelled

Dustin Hurlburt signed his Plea Agreement on June 22, 2004, the date he entered his plea. It was then anticipated that the Government, at the appropriate time, would file a §5K.1 Motion requesting a one level downward departure to level 19 (30 - 37 months). Dustin Hurlburt would have been eligible (if recommended by this Court) to be designated at an Intensive Confinement Center (SHOCK) Program. On January 5, 2005, the Bureau of Prisons terminated the SHOCK Program claiming it was no longer "cost-effective."

This sentencing option is no longer available to Dustin Hurlburt.

### Apology to His Investors

Dustin and the undersigned have reviewed all the letters attached to the PSR and those included as "victim impact statements." Dustin is genuinely sorry; he offers his apologies. He wished he had acted more prudently. All he had to do was be honest and up-front. Simply tell everyone he made bad calls in day trading and they lost money including himself. But like many committed intense market players, Dustin thought the stock market would recover. It did not. Dustin joined thousands of other investors across the country whose false hopes of a come back never materialized. When the bubble crashed, the losses were staggering. Many investors - to this day - have never recovered.

Dustin's actions were compounded when he voluntarily accepted investor's money while he was providing other investors with false information.

Mr. Rechberger and the Serventi Trust lost $325,000. The undersigned has reviewed the seven page letter of August 26, 2004 from one of Mr. Rechberger's attorneys. This letter requires a response.

Dustin and his wife Lisa were sued by Mr. Rechberger and the Serventi Trust to recover the

lost investment money. Months before the Hurlburts appeared at the office of Damon & Morey for an EBT, the undersigned spoke to Mr. Rechberger's attorneys, John Donoghue and William Savino. The undersigned told Mr. Savino that Dustin would agree to help him and his client by providing information about Bob Burt, an investor with substantial assets. If established, this evidence could provide Mr. Savino with another defendant to pursue and importantly, one whose finances were secure. In return, the undersigned requested that Lisa Hurlburt be dropped as a defendant. Mr. Savino rejected the undersigned's offer.

Lisa and Dustin Hurlburt appeared in Mr. Savino's office for depositions. Mr. Rechberger was also present. The undersigned told Mr. Savino that Mr. Hurlburt would not answer any questions and refuse to be sworn, citing his client's Fifth Amendment privileges. (Had Mr. Savino accepted the undersigned's offer, Dustin would have testified and answered all questions.) Mr. Hurlburt followed the undersigned's advice. Lisa Hurlburt was questioned for almost two hours. She was asked about a proffer session between Dustin and FBI Agent Steven Halter. The undersigned allowed her to answer these questions. Mrs. Hurlburt testified that her husband told the FBI about Mr. Burt and the manner in which he obtained Mr. Rechberger's fund investment into the fund. The questioning of Mrs. Hurlburt stopped; Mr. Savino and the undersigned left the room to discuss this revelation. The undersigned reminded Mr. Savino of the earlier offer of Dustin's cooperation against Mr. Burt, which for unexplainable reasons had been ignored. Mr. Savino said he believed this evidence would be helpful and expressed his interest in Dustin's cooperation. A month later Mr. Donoghue sent this seven page letter to Sharon Knope, Victim Witness Coordinator.

Since that time, the undersigned and Mr. Savino have had many discussions about this letter. (The undersigned being disturbed and expressing his surprised.) Recently Mr. Savino met for two hours with Dustin (when the defendant was confined at the Batavia Detention Center). Dustin was cooperative; he answered all of Mr. Savino's questions about Mr. Burt's involvement in the investment account. At Mr. Savino's request, the undersigned provided his office with a copy of Dustin's PSR as well as a copy of the Ameritrade Account application signed by Dustin Hurlburt and Bob Burk.

The undersigned continues to speak with Mr. Savino about this matter. It is anticipated that Mr. Savino will furnish this Court with a letter confirming Dustin's cooperation.

**Impact of the Guidelines**

This Court is not required to follow the Guidelines in imposing its sentence. The Guidelines are to be "considered" by the Court along with "18 USC §3553(a)" factors in fashioning a reasonable sentence. ***United States v. Crosby***, 397 F.3rd 103, 110-112 (2nd Cir. 2005); ***United States v. Booker/FanFan***, 125 S.Ct. 738 (2005); see also, ***United States v. Fagans***, 2005 U.S. App. LEXIS 7176 (April 27, 2005) ("[I]n the post-***Booker*** sentencing regime, a sentencing Judge must consider the factors specified in 18 USC §3553(a), normally including the applicable Guideline range, *id.* §3553(a)(4)(A), before deciding whether to impose a Guideline sentence or a non-Guideline sentence. (Citing ***Crosby***.)

As the Crosby Court explains:

> "[W]e will not prescribe any formulation a sentencing Judge will be obliged to follow in order to demonstrate this charge of the duty to "consider" the Guidelines. In other words, we will no more require "robotic incantations" by District Judges then we did when the Guidelines were mandatory." (Case cited.)

*Crosby* at 112

Recognizing the impact of the letters and statements from victim investors, the undersigned asks this Court to consider Dustin Hurlburt's background, family life and character in considering a reasonable sentence in this case.[3]

## Conclusion

Dustin and his wife are penniless. They have lost everything. The agents seized the remaining money from his investment account, ($109,109.40) as well as the balance of his personal funds ($4,695.98).[4] Dustin will lose his home, his vehicles and all remaining assets. Lisa Hurlburt has applied for social services. She receives food stamps; she struggles to raise their three children.

Dustin reiterates his apology to the investors. The market crash was not his fault. That could not be helped. He could not stop the market from dropping. But at least the investors should have been told the truth and given the opportunity to withdraw their funds earlier. In that case, their loses would have been reduced.

Dated: Buffalo, New York
       May 12, 2005

                              Respectfully submitted,

                              /S/ JOEL L. DANIELS
                              JOEL L. DANIELS
                              Attorney for Defendant -Dustin Hurlburt
                              OFFICE & P.O. ADDRESS
                              1366 Statler Towers
                              Buffalo, NY 14202
                              Jdaniels38@aol.com

---

[3] In the Plea Agreement (¶17, p. 8), the Government agrees not to oppose this Court's sentencing defendant at the lowest guideline range.

[4] This money will be divided among the investors.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

-vs-                                                    **CERTIFICATE OF SERVICE**

DUSTIN HURLBURT,                                        File No.  04-CR-146A

        Defendant.
_____

    I hereby certify that on May 12, 2005, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

1. HON. RICHARD J. ARCARA
   United States District Court
   68 Court Street
   Buffalo, NY 14202
2. United States Probation Department
   ***Attn:  Ms. Tammi Rogers, PO***
   68 Court Street
   Buffalo, NY 14202
3. United States Attorney's Office
   ***Attn: Mary Ellen Kresse, Esq., AUSA***
   Federal Centre
   138 Delaware Avenue
   Buffalo, NY 14202

    /S/ Kathleen A. Grabiec
    Kathleen A. Grabiec
    JOEL L. DANIELS
    Attorney at Law
    OFFICE & P.O. ADDRESS
    1366 Statler Towers
    Buffalo, NY 14202
    (716) 856-5140
    Jdaniels38@aol.com